**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

<table>
<tr>
<td>CHAMBERS OF<br>J. Mark Coulson<br>UNITED STATES MAGISTRATE JUDGE</td>
<td>101 WEST LOMBARD STREET<br>BALTIMORE, MARYLAND 21201<br>P: (410) 962-4953 | F: (410) 962-2985<br>mdd_jmcchambers@mdd.uscourts.gov</td>
</tr>
</table>

March 20, 2024

LETTER ORDER AND OPINION TO COUNSEL

RE:     _Luis Rullan v. Jill K. Goden et al._
         Civil No. 1:17-cv-03741-CCB

Dear Counsel:

Plaintiff, Luis Rullan, brought this action against Defendants "for damages and equitable relief to remedy injuries arising out of Defendants' criminal conspiracy to transfer and secrete the assets of companies and individuals sued by Rullan in _Rullan v. Goden, et al._ (D. Md. Case No. 1:12cv-02412-CCB." (ECF No. 46 at 1).[1] United States District Judge Catherine C. Blake referred this case to the undersigned on August 22, 2023, for discovery and all related scheduling. (ECF No. 136). A discovery dispute has arisen, and presently before the Court is Defendants' Motion to Quash, or in the Alternative, Modify Subpoena. (ECF No. 141). The undersigned has considered the motion as well as Plaintiff's opposition and Defendants' reply thereto. (ECF Nos. 154, 161).[2] No hearing is necessary. _See_ Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, Defendants' motion, construed as one for a protective order under Rule 26, will be granted in part and denied in part.

## I.     Background

### A.     Relevant Factual and Procedural History

According to Plaintiff's Amended Complaint, Defendant Frederick Greenberg founded the Timber Ridge Camp (the "Camp") in High View, West Virginia, as early as 2010. (ECF No. 46 at 4).[3] Since 2010, ownership of the Camp's real property and operation of the Camp have been divided between two entities—Timber Ridge, Inc. ("TRI"), who owns the Camp, and Youth World, Ltd. ("YWL"), who operates the Camp. _Id._ Mr. Greenberg "transferred half of his ownership interests in TRI and YWL" to Defendant Jill Goden "as a gift on or about December 15, 2010." _Id._

---

[1] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document.

[2] The undersigned granted the parties four previous extension requests regarding the briefing schedule deadlines for the motion to quash. _See_ (ECF Nos. 149, 151, 153, 159).

[3] Because discovery is guided by the allegations raised in a complaint and the defenses asserted, the facts underlying Plaintiff's lawsuit are taken from the allegations set forth in Plaintiff's Amended Complaint. The undersigned does not wish for either party to construe the references to those allegations as accepting them as true.

Mr. Greenberg and Ms. Goden "lured [Plaintiff] into investing and becoming Goden's partner in the Camp" in the Spring of 2011.  *Id.*  On March 30, 2011, "Goden and [Plaintiff] executed a stock purchase agreement in which Goden and [Plaintiff] each agreed to purchase fifty percent of YWI's stock.  Under the agreement, Goden and [Plaintiff] are fifty percent co-owners of YWI; Goden is President and Treasurer; and [Plaintiff] is Vice President and Secretary."  *Id.*  The parties memorialized their agreement on August 24, 2011, with a Written Partnership and Securities Purchase Agreement ("Partnership Agreement"), under which Mr. Greenberg "sold his fifty percent share in TRI and YWL to [Plaintiff] for $500,000 to be paid in $50,000 annual installments over a ten-year period."  *Id.* at 4–5.  Ms. Goden executed stock purchase certificates on October 27, 2011, denoting that Plaintiff had purchased stock in YWL and TRI.  *Id.* at 5.

Ms. Goden and Mr. Greenberg then "purported to 'fire' [Plaintiff] and threatened to have him arrested if he arrived at Camp" in late May 2012.  *Id.*  After attempts at reconciliation and settlement broke down, Plaintiff filed suit against Ms. Goden and Mr. Greenberg on August 14, 2012, alleging claims of fraud, fraudulent inducement, shareholder oppression, breach of fiduciary duty, negligence, unjust enrichment, breach of contract, and financial accounting ("First Lawsuit").  *Id.*  Plaintiff amended his First Lawsuit to add TRI, YWL, and Youth World International Company, Ltd. ("YWI") on September 30, 2014.  *Id.*

Plaintiff alleges that, during the First Lawsuit, Ms. Goden and Mr. Greenberg unilaterally executed promissory notes "in the stated principal amount of $550,000 payable to the order of Defendant The Frederick I. Greenberg Revocable Trust ('Greenberg Revocable Trust')" and executed a deed of trust "conveying an interest in TRI's real property to the Greenberg Revocable Trust as security for the promissory note" in April 2013 and June 2013, respectively.  *Id.* at 6. Defendants then supposedly formed Cacapon River Camps, Inc. and Cacapon Camps, Inc. (collectively the "Cacapon Companies") in August 2014 to transfer substantially all of YWL and YWI's assets thereto.  *Id.* at 7.  "Upon information and belief, the Cacapon Companies are now operating the Camp, and the Camp's income and disbursements are now recorded in the books and records of the Cacapon Companies."  *Id.*  Moreover, TRI, YWL, and YWI "effectively ceased operations, engaged in no business, and received no business revenue following the incorporation and transfer of assets to the Cacapon Companies" after "Greenberg and Goden diverted all business that had previously been exploited by TRI, YWL, and YWI to the Cacapon Companies."  *Id.*

Also in August 2014, Ms. Goden and Mr. Greenberg submitted conflicting discovery responses during the First Lawsuit by indicating in sworn interrogatory responses that Ms. Goden did not own any stock in YWL despite Defendants' previous representation that Mr. Greenberg gifted Ms. Goden a fifty percent stake in YWL in 2010.  *Id.*  Those interrogatory responses were signed and submitted by attorney Jonathan M. Davidoff of Davidoff Law Firm, P.L.L.C., "their then-lead counsel" in the First Lawsuit.  *Id.*  Defendants were also represented by attorneys Mark A. Simanowith and Mathew A. Haven of Saul Ewing, LLP as "local Maryland counsel" during the First Lawsuit.  *Id.* at 7–8.

Ms. Goden and Mr. Greenberg simultaneously "executed another promissory note [on behalf of TRI] promising to pay $530,000 to the Greenberg Revocable Trust—thereby saddling TRI with a total of at least $1,080,000 in bogus debt to the Greenberg Revocable Trust" before executing another deed of trust on behalf of TRI "conveying an interest in TRI's real property to

2

the Greenberg Revocable Trust as security for the promissory note." *Id.* at 8.  Ms. Goden and Mr. Greenberg subsequently filed two Maryland state court actions to dissolve YWI and YWL, which were filed on their behalf by attorney Bart Colombo of O'Reilly & Mark, PC.  *Id.*  Ms. Goden and Mr. Greenberg affirmed in their sworn complaint for dissolution that Ms. Goden owned fifty percent of YWL, in line with their previous representations but in contradiction to the August 2014 written discovery responses.  *Id.*  The complaint for dissolution also "represented that 'YWL has recently ceased operations,' apparently reflecting the brand new Cacapon Companies' assumption of management and operation of the Camp four days earlier."  *Id.*

On August 18, 2014, Mr. Greenberg and TRI, through Mr. Davidoff, filed suit in Florida state court to invalidate the Partnership Agreement, again representing in their ensuing complaint that Mr. Greenberg and Ms. Goden each had a fifty-percent interest in YWL.  *Id.*  Mr. Greenberg obtained a default against Plaintiff in the Florida state court case on September 19, 2014, before Plaintiff removed that case to the U.S. District Court for the Southern District of Florida.  *Id.* at 9.[4]

Also on August 18, 2014, Ms. Goden "filed her Chapter 13 Voluntary Petition in the Bankruptcy Court" for the U.S. District of Maryland.  *Id.*  Plaintiff avers that Ms. Goden concealed her interests in YWL and YWI "by failing to disclose them in her schedules," "fail[ing] to disclose the pending dissolution lawsuits," and improperly "schedul[ing] the value of her share in TRI as $0."  *Id.*

On August 21, 2014, Defendant Alex Reece, a former manager of the Camp, "concealed [the Cacapon Companies'] existence during his deposition as a 30(b)(6) witness for TRI, YWL, and YWI" in Plaintiff's First Lawsuit.  *Id.* at 3, 9.  Specifically, Reece allegedly falsified that YWL operates the Camp despite Ms. Goden's "allegation in the verified YWL dissolution complaint that YWL had 'recently ceased operations' and Greenberg's testimony that the Cacapon Companies had assumed operation of the Camp."  *Id.* at 9–10.  Mr. Davidoff represented Reece during his deposition as a 30(b)(6) witness for TRI, YWL, and YWI.  *Id.* at 10.

On November 20 and December 15, 2014, Mr. Greenberg submitted bids to purchase the bankruptcy estate's assets from the Trustee "in order to reacquire Goden's share of the Camp assets."  *Id.*  Mr. Davidoff submitted those bids on Mr. Greenberg's behalf.  *Id.*  Then, on December 19, 2014, after Plaintiff "filed his original Complaint in this case as an Adversary Proceeding in the Bankruptcy Court," Ms. Goden "moved to voluntarily dismiss the entire proceeding three days later.  Upon information and belief, she did so because she realized from the original Complaint that [Plaintiff] had discovered Defendants' scheme to use Goden's bankruptcy filing to cover up the fraudulent transfers of TRI's, YWL's, and YWI's assets."  *Id.* at 10.  Plaintiff submits that the above actions constitute criminal conduct in violation of 18 U.S.C. §§ 152(1), (3), and (7), 157, 371, and 1621.  *Id.*

Plaintiff's Amended Complaint also alleges that Defendants improperly failed to pay corporate bills and file corporate reports.  For instance, Plaintiff alleges that Capon Valley Bank informed Mr. Greenberg on September 17, 2013, that a $2.4 million loan issued jointly to TRI and Mr. Greenberg individual was in default and required Mr. Greenberg to establish an escrow

[4] The docket report for the Southern District of Florida case indicates that Plaintiff's motion to dismiss in that case was granted on March 5, 2019, by default because Mr. Greenberg and TRI failed to oppose it.

3

account with a minimum balance of at least $208,526. *Id.* at 11. Capon Valley Bank then issued a notice of foreclosure sale initiating foreclosure proceedings against TRI and Mr. Greenberg personally for the sale of TRI's 70.5-acre property that served as collateral for the $2.4 million loan. *Id.* "[U]pon information and belief, Greenberg and TRI defaulted on the Capon Bank loan so that the Capon Bank would foreclose on the TRI property, allowing an insider to buy the land back at a foreclosure sale and freeing the Camp from a *lis pendens* that [Plaintiff] had placed on the Camp property." *Id.* Plaintiff also contends that YWL failed to pay state and federal taxes throughout the pendency of Plaintiff's First Lawsuit as evidenced by the Baltimore County Circuit Court entering various judgments against YWL throughout 2013 and 2014 in favor of the State of Maryland and the United States. *Id.* at 11–12. The Maryland Department of Assessment and Taxation then filed notices of forfeiture stating that YWL's and YWI's corporate statuses were forfeited for failing to file property returns. *Id.* at 12. Both the West Virginia Secretary of State's Office and the Maryland Department of Assessment and Taxation indicated that TRI's corporate status was forfeited as of June 13, 2018. *Id.*

Then on or about April 25, 2018, Mr. Greenberg filed a voluntary Chapter 11 bankruptcy petition on behalf of TRI, indicating therein that Mr. Greenberg is TRI's President. *Id.* at 13. Mr. Greenberg claims in that petition that he is the sole owner of TRI and that Ms. Goden has no ownership interest in TRI, "but omits the material fact that Goden's fifty percent share of TRI is vested with the Maryland Bankruptcy Trustee and is owned by her estate." *Id.* Plaintiff believes that Mr. Greenberg did so to "further his scheme to commit bankruptcy fraud." *Id.* at 14. Accordingly, Plaintiff filed the present nineteen-count lawsuit against Defendants, alleging unauthorized and fraudulent transfers (Counts I, IV, and VII); shareholder oppression (Counts II, V, VIII, and XIII); breach of fiduciary duty (Counts III, VI, IX, XV, and XVI); aiding and abetting (Counts X and XIX); civil conspiracy (Counts XI and XVIII); negligence and breach of fiduciary duty of care (Counts XII and XIV); and conversion (Count XVII).

B.   The Subpoena

Relevant for purposes of Defendants' motion, Plaintiff served a subpoena on the Davidoff Law Firm on December 8, 2023 (the "Subpoena"), which commands the production of:

> [F]or the period from August 18, 2012 to the present day, all documents (other than those publicly filed in court of law) and communication in whatever form (electronic or hard copy), including but not limited to receipts; invoices; billable records; statements and notices from financial institutions; QuickBooks or other accounting entries; and letters, e-mails, transcripts, SMS messages, and instant messages to, from, or between you, co-counsel, Jill K. Goden, Eric S. Goden, Frederick I. Greenberg, the Camp Companies,[] and any other entity, trust, or person owned or controlled, in whole or in part, by Jill K. Goden, Eric S. Goden, or Frederick I. Greenberg concerning:

1. The decision to bring, preparation, filing, and prosecution of Jill K. Goden's bankruptcy proceeding in the U.S. Bankruptcy Court for the District of Maryland, Case No. 14-22934-NVA.

2.  The decision to bring, preparation, filing, and prosecution of the lawsuit brought by Federick I. Greenberg and Timber Ridge, Inc. against Luis (Janer) Rullan and Luis (Colom) Rullan, Sr. in the U.S. District Court for the Southern District of Florida, Case No. 9:14-cv-81191 (removed by Luis Rullan from the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida).

3.  The decision to bring, preparation, filing, and prosecution of the dissolution lawsuits of Youth World, Ltd. (Case No. 03-C-14-008892 OT) and Youth World International Company, Ltd. (Case No. 03-C-14-00889a OT) in the Circuit Court for Baltimore County, Maryland.

4.  The decision to form and the formation and capitalization of Cacapon Camps Inc. and Cacapon River Camps Inc. and any transfer or anything of value, tangible and intangible, from Youth World, Ltd. and/or Youth World International Company, Ltd. to Cacapon Camps Inc. and/or Cacapon River Camps Inc.

5.  Debts or loans (including but not limited to credit cards and mortgages), the forgiveness thereof, payments, any transfer or monies, assets, or other thing of value to, from, or among Jill K. Goden; Eric S. Goden; Frederick I. Greenberg; the Camp Companies; the Frederick I. Greenberg Revocable Trust; and any other entity, trust, or person owned or controlled, in whole or in part, by Jill K. Goden, Eric S. Goden, or Frederick I. Greenberg.

6.  Any compensation paid to you or your law firm by Jill K. Goden; Eric S. Goden; Frederick I. Greenberg; the Camp Companies; the Frederick I. Greenberg Revocable Trust; and any other entity, trust, or person owned or controlled, in whole or in part, by Jill K. Goden, Eric S. Goden, or Frederick I. Greenberg concerning the legal proceedings identified in Paragraphs one through three (1-3) above and the Cacapon Camps Inc. and Cacapon River Camps Inc. Company, Ltd.; Cacapon Camps Inc.; Cacapon River Camps Inc.

(ECF No. 141-1 at 4; ECF No. 154-1 at 5).  Defendants' specific objections to this subpoena are enumerated as follows in its motion:

The Defendants hereby assert the attorney/client privilege with respect to all communications with the Davidoff Law Firm, and object to the production of any documents prepared by the Davidoff Law Firm which constitutes attorney work product.

The Subpoena is clearly an attempt by the Plaintiff to harass the Defendants, as the requests are clearly protected, and/or beyond the time-period for which an attorney is required to retain records for a client.  Additionally, the materials sought in inquiries 5 and 6 are wholly irrelevant and outside the scope of the issues in the instant action.  Plaintiff and his counsel's displeasure with Defendants' prior counsel is no secret in this matter.  However, any such opinion and/or feelings do not justify Plaintiff's attempt to obtain clearly protected documents and communications.

WHEREFORE, Defendants respectfully request that the Court enter an Order granting Defendants' Motion to Quash requests 1 through 4 of the Subpoena, and that they be granted any further relief as the nature of their cause may require.

(ECF No. 141 at 2–3).[5]

## II.    Analysis

### A.    Plaintiff's Procedural Arguments Seeking Denial of the Motion

As a threshold matter, Plaintiff raises two procedural arguments in urging the Court to deny Defendants' motion: (1) that this Court has no jurisdiction to adjudicate Defendants' motion; and (2) that Defendants failed to comply with this Court's prior discovery order. (ECF No. 154 at 6–8, 34). Plaintiff's first argument is correct as it relates to a subpoena's compliance with the language of Rule 45, but the undersigned will not dispose of Defendants' motion on that ground based on Defendants' invocation of Rule 26.

Federal Rule of Civil Procedure 45(d)(3)(A)(iii)–(iv) provides that, "On timely motion, the court for the district where compliance [of a subpoena] is required must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception applies; or subjects a person to undue burden." Plaintiff argues that Defendants' motion should be denied because the proper court to consider Defendants' motion is the U.S. District for the Southern District of New York. (ECF No. 154 at 6). Specifically, Plaintiff posits that the Southern District of New York is the proper forum to adjudicate Defendants' motion because the Davidoff Law Firm is located in New York, NY, and the Subpoena required production of documents "c/o Alexander Shapiro, Esq., Ford O'Brien, Landry, LLP . . . which is within 100 miles of Davidoff Law as required by Fed. R. Civ. P. 45(c)(2)." *Id.*; *see also* Fed. R. Civ. P. 45(c)(2) (noting that a subpoena may command the production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person).

The language of Rule 45(d)(3)(A) is clear that "the court for the district where compliance is required" must quash or modify an improper subpoena. Courts in the Fourth Circuit routinely hold that motions to quash must be filed in accordance with this directive, even where Rule 45(a)(2) requires that a subpoena be issued by the court where an underlying action is pending. *See, e.g.*, *Philips N. Am. LLC v. Little*, No. 3:22-MC-0096-MOC-DSC, 2022 WL 2517193, at *1 (W.D.N.C. July 5, 2022) ("Although a subpoena must be issued by the court where the underlying action is pending under Rule 45(a)(2), challenges to the subpoena are heard by the district court where compliance with the subpoena is sought."); *Smartmatic USA Corp. v. Herring Networks,*

---

[5] "As a general principle, a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena." *CineTel Films, Inc. v. Does 1-1, 052*, 853 F. Supp. 2d 545, 554 (D. Md. 2012) (cleaned up). Accordingly, "The District of Maryland has held that . . . defendants do have standing to quash or modify subpoenas on the grounds that the subpoena requires disclosing potentially privileged or otherwise protected matter." *Id.* Here, Defendants object to the Subpoena on the grounds that the Subpoena requires disclosing potentially privileged information regarding some of the individual Defendants' prior communications with the Davidoff Law Firm. The undersigned therefore concludes as a preliminary matter that Defendants have standing to object to the Subpoena.

*Inc.*, No. 3:23MC00006, 2023 WL 7329507, at \*4–5 (W.D. Va. Nov. 7, 2023); *Nat. Immunogenics Corp. v. Newport Trial Grp.*, No. 1:18MC3, 2018 WL 1884988, at \*3 (W.D.N.C. Apr. 19, 2018); *see also* Fed. R. Civ. P. 45(a)(2). The Subpoena commands compliance at 275 Madison Avenue in New York, NY, 10016. (ECF No. 141-1). Thus, a New York federal district court is the proper forum for Defendants to adjudicate their motion to quash.

Although Defendants cite Judge Blake's referral to the undersigned for all discovery and related scheduling as evidence that the undersigned may adjudicate the present motion, neither Judge Blake's referral nor the undersigned's ensuing Informal Discovery Memorandum (ECF No. 137) contemplate countermanding the forum instruction of Rule 45. The undersigned is receptive to Defendants' argument that "From a practical matter, it is simply not feasible for the Defendants to adjudicate discovery disputes in this matter in other jurisdictions." (ECF No. 161 at 2–3). But it is not the Court's (nor Plaintiff's) doing that the Davidoff Law Firm maintains a place of business in New York and that Defendants' current counsel is not admitted to practice before any applicable New York federal court. And although "Mr. Davidoff consents to the Motion to Quash being adjudicated in this Court," his consent is inconsequential in resolving this threshold issue. *Id.* at 3. Rule 45(f) provides that "When the *court where compliance is required* did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." (emphasis added). Thus, Defendants' motion is denied to the extent that it seeks to quash the Subpoena pursuant to Rule 45.

However, both this Court and others within the Fourth Circuit have construed motions to quash under Rule 45 or discovery-related motions generally as motions for a protective order under Rule 26(c) where "the party discusses, or at least bases its motion in part on, Rule 26." *Flame S.A. Glory Wealth Shipping Pte Ltd. v. Indus. Carriers, Inc.*, No. 2:13-CV-658, 2014 WL 12551212, at \*2 (E.D. Va. May 29, 2014); *see also Sirpal v. Fengrong Wang*, No. CIV. WDQ-12-0365, 2012 WL 2880565, at \*4 n.12 (D. Md. July 12, 2012) ("Further, the Court could construe the motion as one for a protective order, and consider the Rule 26 factors, including relevance, in deciding the motion."); *Flame*, 2014 WL 12551212, at \*2 ("Accordingly, even though Flame is represented by counsel and repeatedly asks this Court to quash the subpoenas at issue instead of asking for a protective order . . . the Court will construe the motion as a request for a protective order under 26(c)."); *cf. Washington v. Thurgood Marshall Acad.*, 230 F.R.D. 18, 22 (D.D.C. 2005), *on reconsideration*, 232 F.R.D. 6 (D.D.C. 2005) ("The Court therefore deems defendant's motions to quash as, in the alternative, motions for a protective order, and will evaluate the motions according to the standard enunciated in Rule 26, including whether the information sought is relevant to any claims or defenses raised in this case."). Rule 26(c)(1) provides that "A party or any person from whom discovery is sought may move for a protective order *in the court where the action is pending*." (emphasis added). Here, Defendants' motion is based, at least in part, on Rule 26 given Defendants' citation to the same in support of its motion to quash. (ECF No. 141 at 2). The undersigned will therefore construe Defendants' motion as one for a protective order under Rule 26(c) and analyze it accordingly.

Turning to the second procedural argument, Plaintiff urges that "Defendants' Motion should be denied because Defendants did not comply with this Court's discovery Order" at ECF

No. 137.  (ECF No. 154 at 34).[6]  Plaintiff is correct that the parties have not followed that memorandum's submission requirements in raising this discovery issue.  However, the undersigned issued a paperless order on January 17, 2024, in response to Plaintiff's request for formal briefing on the pending motion permitting both parties to file formal briefs regarding the motion rather than strictly adhere to the undersigned's discovery order given that the motion to quash "involves complex legal and factual issues, including jurisdiction and the crime-fraud exception."  (ECF No. 147 at 1; ECF No. 148).  Relatedly, Plaintiff faults Defendants for failing to conduct a Local Rule 104.7 conference call before filing the present motion.  (ECF No. 154 at 34).  Interestingly, Plaintiff did not fault Defendants for doing so in its January 16, 2024, correspondence to the undersigned requesting that Plaintiff be permitted to submit full briefing in opposition to the present motion.  (ECF No. 147).  Rather, Plaintiff indicated that the parties did meet and confer pursuant to Local Rule 104.7 on January 5, 2024, and that the issues relevant to the present motion still remained.  Given those specific circumstances, and noting that analyzing the present motion serves the interests of judicial efficiency in light of the parties' three-months' worth of extension requests in fully briefing the present motion, the undersigned will excuse Defendants' failure to meet and confer prior to filing its motion on this sole occasion.  Both parties are nevertheless forewarned that failure to comply with this Court's discovery orders/procedures moving forward may result in any discovery-related motions being denied or in discovery-related sanctions.[7]

B.  The Merits of Defendants' Motion

i.  Whether Subpoena Requests (1) Through (4) are Protected Under the Attorney-Client Privilege and/or Attorney Work Product Doctrine

Turning to the merits of Defendants' motion, Defendants first argue that requests (1) through (4) of the Subpoena are undiscoverable because they are protected by attorney-client privilege and the attorney work product doctrine.  (ECF No. 141 at 2).  "The purpose of the attorney-client privilege is 'to encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'"  *Neuberger Berman Real Est. Income Fund, Inc. v. Lola Brown Tr. No.*

---

[6] Per the undersigned's Memorandum to Counsel Concerning Discovery, the Court allows parties to follow certain procedures in settling discovery disputes through informal position letters rather than filing formal discovery motion. *See* (ECF No. 137).

[7] It is worth noting that a denial of a discovery motion for failing to meet and confer pursuant to Local Rule 104.7 is generally without prejudice to the moving party to simply refile the motion in the event that further efforts to resolve the discovery issues are unsuccessful.  There is thus likely no practical benefit to require further meet and confer efforts at this time given Plaintiff's representation that the parties' meet and confer *after* the motion was filed was unsuccessful, and in fact may have created additional issues not currently before the Court.  *See* (ECF No. 147).  Moreover, the undersigned's decision to excuse the meet and confer requirement in this specific context is in line with various other federal courts' decisions to excuse local rule meet and confer requirements, both in the Fourth Circuit and elsewhere.  *See, e.g.*, *Ricks v. Huynh*, No. 2:20CV292, 2021 WL 2432028, at *3 (E.D. Va. Apr. 15, 2021), *report and recommendation adopted*, No. 2:20CV292, 2021 WL 2014795 (E.D. Va. May 20, 2021), *aff'd*, No. 21-1703, 2022 WL 203747 (4th Cir. Jan. 24, 2022); *JTH Tax, Inc. v. Aime*, No. 2:16cv279, 2016 WL 9223926, at *6 (E.D. Va. Dec. 13, 2016); *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 297, 302 (D. Nev. 2019); *Rogers v. Giurbino*, 288 F.R.D. 469, 477–78 (S.D. Cal. 2012).

*1B*, 230 F.R.D. 398, 409 (D. Md. 2005) (quoting *Upjohn v. United States*, 449 U.S. 383, 389 (1981)).  "However, because the privilege interferes with the truth seeking process and is in derogation of the public's right to every man's evidence, it is not favored by the federal courts and is to be strictly confined within the narrowest possible limits consistent with the logic of its principle." *Id.* (internal quotations omitted).  "The party claiming a privilege bears the burden of showing that '(1) the attorney-client privilege applies; (2) the communications were protected by the privilege; and (3) the privilege was not waived.'" *United States v. Elbaz*, 396 F. Supp. 3d 583, 597 (D. Md. 2019) (quoting *United States v. Aramony*, 88 F.3d 1369, 1389 (4th Cir. 1996)).  To that effect, the attorney-client privilege applies when:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*In re Grand Jury Subpoena*, 341 F.3d 331, 335 (4th Cir. 2003).  "The privilege must be asserted on a document-by-document basis; a blanket claim of privilege that does not specify what information is protected is not sufficient to make a claim for privilege." *Elbaz*, 396 F. Supp. 3d at 598.

"As set forth in Rule 26(b)(3), the work product doctrine prohibits a party from obtaining discovery of materials prepared in anticipation of litigation, absent a showing both of substantial need and of an inability to obtain, without undue hardship, the substantial equivalent of the materials sought." *LaSalle Bank Nat'l. Ass'n v. Lehman Bros. Holdings*, 209 F.R.D. 112, 115 (D. Md. 2002).  Determining whether certain materials constitute protected work product requires assessing "whether in light of the nature of the documents and the particular facts of a given case, the documents can be fairly said to have been prepared or obtained because of the prospect of litigation or whether they must be deemed to have been prepared in the ordinary course of the company's business." *Id.* (citing *APL Corp. v. Aetna Casualty & Surety Co.*, 91 F.R.D. 10, 18 (D. Md. 1980)); *see also Paice, LLC v. Hyundai Motor Co.*, 302 F.R.D. 128, 133 (D. Md. 2014) ("[T]he proponent of the privilege carries the burden of demonstrating that the documents at issue were created 'because of' the present litigation.").  "In satisfying this burden, a party cannot rely on conclusory statements in its memoranda; rather, as in the case of attorney-client privilege, the proponent must provide specific factual support for its assertions." *Paice*, 302 F.R.D. at 133.

Defendants set forth no specific factual bases for their privilege assertions.  Rather, Defendants only blanketly assert the attorney-client and work product protections "with respect to all communications with the Davidoff Law Firm" and that "the requests are clearly protected, and/or beyond the time-period for which an attorney is required to retain records for a client." (ECF No. 141 at 2–3).  These general, conclusory statements with no factual support or further explanation are insufficient to warrant granting Defendants' motion whether construed under Rule 45 or Rule 26.  *See, e.g., Mezu v. Morgan State Univ.*, 269 F.R.D. 565, 677 (D. Md. 2010) ("It is

clear that its terse description does not constitute a particularized justification for asserting privilege as a basis for refusing discovery and is insufficient to establish any privilege. Therefore, Defendant violated Fed. R. Civ. P. 26(b)(5)(A)(ii) and Discovery Guideline 9.d."); *Hempel v. Cydan Dev., Inc.*, No. PX-18-3404, 2020 WL 4933634, at *5 (D. Md. Aug. 24, 2020) ("In meeting its burden to show that documents were prepared in anticipation of litigation, a party cannot simply rely on conclusory statements in its memoranda.") (internal quotation omitted); *see also* Fed. R. Civ. P. 26(b)(5)(A)(i)–(ii) ("When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."); Local Rule Discovery Guideline 10.d (D. Md. 2023).

Nor does Defendants' reply set forth specific factual support for its asserted privileges beyond conclusory statements. Plaintiff argues in his opposition that, even assuming *arguendo* that Defendants lodged particularized objections, the "crime fraud" exception applies and therefore the requested discovery should be produced. (ECF No. 154 at 11–33). Rather than providing specific factual support for its asserted privileges, Defendants argue only the following before spending the majority of their reply rebutting Plaintiff's crime fraud exception argument:

> Given the scope of documents Plaintiff is seeking through its subpoena to the Davidoff Law Firm, there can be little doubt that the documents sought included privileged attorney client communications and attorney work product . . . Plaintiff has not attempted in any way to restrict subpoena production to those documents which do not constitute privileged attorney client privileged communications or privileged attorney work product. To the contrary, the *focus* of the subpoena is to obtain attorney client communications and attorney work product. Given that the subpoena is specifically tailored to require the production of clearly privileged materials, Defendant's Motion to Quash has made a sufficient showing that the documents sought are privileged.

(ECF No. 161 at 4).

This argument again focuses primarily on conclusory statements with no further indication as to which, if any, documents that fall within the Subpoena's scope are subject to either privilege (or both), and the particular reasons for believing as much. This deficiency is important because the specific circumstances under which each potentially objectionable communication occurred are crucial in determining whether either privilege (or both) applies to protect those communications from disclosure under Rule 26. For instance, in the context of the attorney-client privilege, "Communications are not privileged merely because one of the parties is an attorney or because an attorney was present when the communications were made. When the legal advice is merely incidental to business advice, the privilege does not apply." *United States v. Cohn*, 303 F. Supp. 2d 672, 683 (D. Md. 2003) (internal quotation omitted). The undersigned can envision communications between the Davidoff Law Firm and Defendants that were legal in nature but incidental to business advice given the specific facts underlying this case, such as Mr. Davidoff advising as to the business consequences of dissolving YWL and YWI or the business implications

of forming the Cacapon Companies.  The undersigned can just as easily envision circumstances in which a communication between the Davidoff Law Firm and Defendants was primarily for legal advice, for instance when the Partnership Agreement began faltering prior to the Florida state court lawsuit.  But without any specific indication as to the particular communications that Defendants find objectionable and the reasons for withholding those communications, the undersigned is unable to conclude that Defendants have met their burden in demonstrating that documents/communications falling within the Subpoena's scope are blanketly protected by either or both privileges.  The same conclusion applies to Defendants' work product privilege assertion, which likewise involves further inquiries into whether the requested communications/documents constitute fact work product or opinion work product, as there are distinct standards for analyzing the discoverability of both.  *See, e.g.*, *Equal Rts. Ctr. v. Equity Residential*, No. AMD-06-1060, 2008 WL 11363366, at \*4 (D. Md. June 6, 2008) (describing the discoverability of fact work product, which is analyzed under a "substantial need" standard, and the discoverability of opinion work product, which enjoys "a nearly absolute immunity from discovery").

Accordingly, the undersigned cannot conclude that any particular communications or documents falling within the Subpoena's scope are clearly protected by the attorney-client privilege, attorney work product privilege, or both.  Defendants' motion must therefore be denied and the Subpoena must be effectuated.  However, in light of the above reasoning, the undersigned will not blanketly conclude that all communications and documents falling within the scope of Subpoena requests (1) through (4) are discoverable in light of Defendants' unparticularized objections.  Rather, the Davidoff Law Firm is ordered to begin complying with the Subpoena by collecting and producing all responsive documents.  To the extent that the Davidoff Law Firm and/or Defendants obtain documents or communications they believe to be protected under the attorney-client and/or work product privileges, Defendants shall provide Plaintiff with a concise privilege log identifying those documents or communications that complies with the Local Rules and affords Plaintiff a more concrete explanation as to why those documents or communications are protected.  In the event that Defendants provide such a privilege log, the parties shall meet and confer in accordance with Local Rule 104.7 regarding any disputed documents or communications with the hope that the parties may reach agreement on any contested documents or communications.[8] The parties may then seek Court intervention regarding any unresolved issues in accordance with the undersigned's informal discovery procedures unless otherwise requested by the parties and approved by the Court.  The undersigned will therefore reserve ruling on whether the crime fraud exception applies to Plaintiff's discovery requests given the lack of details regarding which documents or communications are objectionable under the Subpoena and why.  Because the discovery deadline in this case and its companion case was recently extended to May 15, 2024, (ECF Nos. 146, 155),[9] the Davidoff Law Firm shall produce all responsive documents and Defendants shall provide any privilege log by April 19, 2024.  If, based on the volume of information, more time for compliance is needed, the Court is amenable to extending that deadline

---

[8] The undersigned is confident that this process is tenable between the parties given their representation that they have already informally resolved privilege issues regarding Plaintiff's subpoena to Paul Cummings, Mr. Greenberg's prior counsel.  (ECF No. 161 at 3).  And to the extent that Plaintiff's discovery requests are "beyond the time-period for which an attorney is required to retain records for a client," the undersigned cannot order the Davidoff Law Firm to produce what it does not possess.  (ECF No. 141 at 3).

[9] *See also Rullan v. Goden et al.*, No. 12-cv-02412-CCB, ECF No. 318.

as justified.  Should that be the case, the parties should confer and try to reach agreement on a new deadline.

           ii.      Whether Subpoena Requests (5) and (6) are Relevant and Within the Scope of this Lawsuit

Defendants ask the Court to grant their motion only with respect to Subpoena requests (1) through (4).  They nevertheless suggest in their initial motion, though, that "the materials sought in inquiries 5 and 6 are wholly irrelevant and outside the scope of the issues in the instant action." (ECF No. 141 at 3).  The undersigned disagrees.  Rule 26(b)(1) provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

Here, Plaintiff alleges that Defendants engaged in fraudulent money and property transfers "from Camp companies to Defendants' personal accounts or those of their *alter ego* companies and other entities by claiming that the transfers were done as repayment for various loans." (ECF No. 154 at 9); *see also generally* (ECF No. 46).  Request (5) is relevant to Plaintiff's argument that Defendants engaged in fraudulent transfers to shield the assets implicated in the First Lawsuit or indicating that such asset transfers were perfectly legal and possibly even unrelated to Plaintiff's First Lawsuit.  Moreover, request (6) is relevant to Plaintiff's assertion that Camp funds were improperly used to pursue derivative lawsuits in an attempt to thwart enforcement of an adverse judgment through Plaintiff's First Lawsuit, which Plaintiff argues could support negligence and breach of fiduciary duty claims, if not give rise to "additional tortious conduct by Defendants." (ECF No. 154 at 10).  Without Defendants providing further factual support for their one-sentence objection to requests (5) and (6) on relevance/scope, the undersigned cannot conclude that requests (5) and (6) are "wholly irrelevant and outside the scope of the issues in the instant action." (ECF No. 141 at 3).

### C.  The Court Will Nevertheless Order That Subpoena Request (1) Need Not be Enforced

"Rule 26(c) . . . governs the issuance of protective orders.  For good cause, the Court may issue such an order 'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'"  *Enovative Techs., LLC v. Leor*, No. CV JKB-14-3956, 2015 WL 13021884, at *1 (D. Md. Aug. 7, 2015) (quoting Fed. R. Civ. P. 26(c)(1)).  Although "The power of a subpoena is addressed generally in Rule 45," "the general rules governing all discovery . . . set forth in Rule 26 provide additional grounds on which the court may quash a subpoena." *Boshea v. Compass Mktg., Inc.*, No. CV ELH-21-309, 2021 WL 4425765, at *2 (D. Md. Sept. 27, 2021) (internal quotation omitted); *see also In re Campuzano-Trevino*, No. CV SAG-22-00365, 2022 WL 570254, at *3 (D. Md. Feb. 24, 2022) ("The scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26.  Accordingly, regardless of whether the

Court considers [the moving party's] Motion under Rule 45 or Rule 26, the Court must still analyze the subpoena under the relevancy standards enumerated in Rule 26(b).").  The Court "must limit the frequency or extent of discovery" under Rule 26, "[o]n motion or on its own," if it determines that the proposed discovery is outside the scope permitted by Rule 26(b)(1).  Fed. R. Civ. P. 26(c)(iii).

Despite the previous rulings, the undersigned concludes that Subpoena request (1) need not be enforced.  Request (1) seeks all documents and communications surrounding Ms. Goden filing bankruptcy proceedings in the U.S. Bankruptcy Court for the District of Maryland up through the present day. (ECF No. 141-1 at 4).  But careful review of that bankruptcy docket highlights that Mr. Davidoff was not involved in that case.  Mr. Davidoff was not the attorney representing Ms. Goden when she initially filed her Voluntary Petition, there is no indication that Mr. Davidoff assisted Ms. Goden in filing her Voluntary Petition, and neither Mr. Davidoff nor any other attorney from the Davidoff Law Firm ever made an appearance on behalf of Ms. Goden in that bankruptcy case or otherwise became involved in that case.  Nor does Plaintiff's Amended Complaint allege that Mr. Davidoff assisted Ms. Goden in filing her Voluntary Petition or was in any way involved in Ms. Goden's Voluntary Petition.  To the contrary, Plaintiff indicates in his Amended Complaint that a different attorney from a different law firm filed and handled Ms. Goden's original bankruptcy petition. (ECF No. 46 at 9).  Mr. Davidoff confirmed as much in an affidavit attached to Defendants' reply. (ECF No. 161-1 at 3).  The undersigned therefore finds that Subpoena request (1) is and outside the scope permitted by Rule 26(b)(1), and that Defendants/the Davidoff Law Firm are entitled to a protective order regarding request (1).

To the extent that the Davidoff Law Firm is not in possession of any documents or communications responsive to the remaining portions of Plaintiff's Subpoena, the undersigned cannot direct Davidoff Law Firm to produce what it does not possess.  For instance, Mr. Davidoff suggests that he and the Davidoff Law Firm have little to no information regarding requests (4), (5), and (6). *See* (ECF No. 161-1 at 3–4).  If that is the case, the Davidoff Law Firm should indicate as much in conducting a reasonable investigation in responding to the Subpoena as set forth in this Letter Order and Opinion.

### III.    Conclusion

For the foregoing reasons, Defendants' Motion to Quash, or in the Alternative, Modify Subpoena (ECF No. 141), construed as a motion for a protective order under Rule 26, is denied in part and granted in part.  The motion is denied to the extent that Defendants have failed to set forth with any specificity factual support for their contention that the Subpoena to the Davidoff Law Firm seeks wholly privileged documents and communications regarding requests (1) through (4). As such, the Davidoff Law Firm shall conduct a reasonable investigation into responsive documents in accordance with the Federal Rules of Civil Procedure and this Court's Local Rules in responding to the Subpoena, and shall provide Plaintiff with such responsive documents by April 19, 2024.  If, based on the volume of information, more time for compliance is needed, the Court is amenable to extending that deadline as justified.  Should that be the case, the parties should confer and try to reach agreement on a new deadline. To the extent that Defendants and/or the Davidoff Law Firm believe documents or communications discovered during the course of that investigation are protected under the attorney-client privilege, attorney work product doctrine, or

both, Defendants shall provide Plaintiff with a privilege log detailing as such.  The parties should then confer under Local Rule 104.7 to resolve any potential disputes before seeking Court intervention.  However, Defendants, and in turn the Davidoff Law Firm, need not abide by request (1), as that request is outside the scope of relevant discoverable information obtainable from the Davidoff Law Firm.

Notwithstanding its informal nature, this Letter Order and Opinion is considered a formal Order and Opinion of the Court, and the Clerk should docket it as such.

Sincerely yours,

_____/s/_____

J. Mark Coulson
United States Magistrate Judge

CC: The Honorable Catherine C. Blake

14